Good morning. Good morning, sir. I'd like to reserve three minutes for rebuttal. You may be seated. On behalf of Raymond Yowell, this case is about the Treaty of Ruby Valley in 1863, which the Court of Claims found specifically was a one-sided treaty for adhesion in 1863 to ignorant and unlettered Indians and was unfair and dishonorable. Despite the fact that Congress never intended that payment of claims under the Indian Claims Commission Act equals extinguishment, that is what the Distribution Act purports to do. Despite the fact that the treaty has never been litigated, this Distribution Act purports to extinguish the treaty and all Western Shoshone rights by distribution of the money. Despite the fact that this Court would never give comity to the ICC decision based on its defective process, substantively and procedurally, that is exactly what the government asks you to do. Despite the fact that the United Nations has specifically found that the ICC proceedings did not comply, and I'm quoting from the United Nations decision of March 2006, page two, did not comply with contemporary international human rights norms, principles, and standards that govern determination of indigenous property interests, as stressed by the Inter-American Commission on Human Rights in the case Mary and Kerry Dan v. The United States, which is the Organization of American States. So two respected international human rights bodies have found that the Indian Claims Commission process was fundamentally flawed, violated the due process and equal protection rights of the Western Shoshone. Your client is the President of the tribe? He is the Chief of the Western Shoshone National Council. Okay. So he is an officer of? He is the chief, what would be the equivalent of the President, Your Honor, of the national, the traditional government of the Western Shoshone, the 10,000-member nation. And I am wondering what kind of claim he has. I mean, the treaty was not, and what kind of claim he has against the United States. What is the cause of action here? The cause of action is a declaratory judgment with regard to the effect of the receipt of the Distribution Act money. And the jurisdiction for that is based on what? The Indian Claims Commission Act. Well, we are not a successor. I mean, there is no Indian Claims Commission anymore. This is the... And the successor court to the Indian Claims Commission was the Court of Claims, which was then succeeded by the Court of, by the Claims Court and is now the Court of Federal Claims, right? We are not the successor court. This is the culmination of that process that began with the filing of the claim before the Indian Claims Commission in 1951. So, 53 years later, that process is completed or proposed. You know, I am aware of the Indian Claims, but I handled ICC cases even older than this one when I was at the Claims Court. I had the one that was filed the year I was born, that I closed out. So, I know these things carry on for a long time, but we are not the successor. The Ninth Circuit, this court here is not the successor to the Indian Claims Commission. Any problem you have with the Indian Claims Commission judgment, you have to take up in the court where the, that the successor to the, to the commission. No? Well, we don't believe that that's true, Your Honor. The You have to have some other basis for jurisdiction in this court. Well, the treaty Oh, I'm sorry. I said this court. I mean the district court. I mean, you have an APA claim, I understand, right? I'm sorry? You have an APA claim. Yes. Administrative procedure claim. But the problem with that is you don't have final agency action. You don't have an action by an agency. You want to litigate, you want a declaration as to the legality of an act of Congress. You don't have an APA kind of claim. Well, if we are allowed to amend, we have an APA claim. What would be your APA claim if you're allowed to amend? There is now a process that's ongoing that, to actually distribute the money by the Department of Interior. The $26 million? $145 to $153 million. Interest has grown on that amount, Your Honor. But I'm identifying the amount. It was $26 million. I mean, it's grown now, but I'm identifying the correct fund. You are. The initial amount was $26 million. I didn't mean to limit you in terms of the amount of money. But that was as a case of the consequence of a judgment of the Indian Claims Commission, right? It was. Again, why are we the courts to why is an APA action the proper vehicle to challenge the payment of a judgment on an existing judgment? Well, a 60B action, which is what this is in the next case, is a 60B action. They both relate to the same challenges of the treaty and the ICC process, in which the United Nations and the Organization of American States has found that the United States violated the rights of Western Shoshone, the due process rights, equal protection rights, and the rights to a fair trial, throughout that entire process. And an independent action under 60B is an appropriate manner in which to challenge that. No, I don't dispute that. But you've got to 60B action has to be brought in the court that's under the judgment. You can't go to a different court. You can't go to a different court, Your Honor. You can? Yes. Where is that? We can go before this court to seek relief from, before the District Court of Nevada to seek relief from Dan. Excuse me? We could go before the court in Nevada to seek relief from the Dan decision. Where do you get that? I mean, how do you get that? Under 60B, you can bring an action into District Court to seek relief from a Supreme Court decision. Well, no. It is a Supreme Court opinion that implements a judgment of a trial court. Judgments are always entered by trial courts. Courts of Appeals, Supreme Courts, don't enter final judgments. Those are only entered by a trial court. So even if it's a Supreme Court opinion, you have to then go back and look and see where was the action initiated. And that's where you have to start your 60B process. You can't come to the District Court of Nevada and say, gee, there's a judgment in Minnesota I don't like. I'm going to ask you to reopen the judgment in the District Court of Minnesota. Can't do it. If you have a problem with a judgment in the District of Minnesota, you have to go there and have them apply 60B. And if it's Indian Claims Commission, then you have to go to the current embodiment of the Indian Claims Commission, and that's the Court of Federal Claims in Washington, where you've already been, unsuccessfully, right? It's on appeal, but that's a separate portion of the case that was split. It's on appeal. Well, I certainly don't want to prejudge what will happen there, but my point is that the Court of Federal Claims has rolled in its on appeal to the appellate court there. Did you want to save some time for rebuttal? Yes. Okay. We'll hear from the government. May it please the Court. Sam Sankar for the United States Government. In his complaint and on appeal, Mr. Yowell appears to be seeking a declaratory judgment that accepting certain payments from the United States Government won't affect his claims to land and to further payments under the Treaty of Ruby Valley. In the district court, he failed to identify a valid waiver of sovereign immunity as against the government, and that's why the district court dismissed the case without reaching the merits. Plaintiffs who sue the United States have the burden of establishing a valid waiver of sovereign immunity in order to proceed. In his briefs and in the district court, Mr. Yowell has cited several statutes in an attempt to identify such a waiver, but none of them actually qualify. In his brief before this Court, all of the cases that apply an APA waiver at least identify an agency action, and although there's some disagreement within this Court about the scope of the APA's waiver, all of the cases that apply an APA waiver at least identify an agency action, and none of them actually qualify. That is being challenged, and this complaint here does not identify such an action. Today, he tells us, and maybe this is not his complaint, that the agency action he wishes to challenge is the effort to disperse the $46 million plus interest judgment. Would that qualify? I think, in theory, that might qualify as an agency action that he could challenge. However, his complaint was filed before the final rule describing how that distribution would take place was even promulgated. So the complaint was premature. He could have filed another complaint later on after the promulgation of the final rule or, indeed, prior to the distribution of the money, but that's not his complaint. Any reason we shouldn't remand and let him amend to add an APA challenge to the final rule? You said there is a final rule now? There is a final rule in place. There is a good reason, and that is because Mr. Yowell has a number of claims before various courts. Mr. Yowell and others challenging the distribution under this Act, remanding to the district court to add a claim that appears to be wholly unrelated and totally new to this litigation wouldn't be fair to the parties before the litigation. And at root, what Mr. Yowell is seeking is one of two things, I believe. If you look at his complaint, he's either seeking land under the Treaty of Ruby Valley, which is properly sought under a quiet title act, and that's the next case before this Court. And the alternative, he's seeking money, damages that he would like further payment of damages in return for that land that he gave up – I'm sorry, not gave up, that was taken from the tribes earlier in time. And that clearly requires a waiver of sovereign immunity and not the kind of waiver that would be provided by the APA. In addition to the APA, Mr. Yowell also cites, at last, the quiet title act, but as described, as you'll see in the next case, Mr. Yowell is already party to it. Kennedy. Well, if he's seeking money, we're back to the Court of Federal Claims, aren't we? He might be able to bring something in the Court of Federal Claims. It's theoretically possible that under the Indian Tucker Act or the Tucker Act, there would be jurisdiction to seek damages in the Court of Claims. But that's not – again, it's not this complaint, which was not filed in the Court of Federal – in the Court of Claims, nor is it this case, which appears to be seeking declaratory relief. And there's no reason for us to transfer the case to the Court of Federal Claims? Absolutely not, Your Honor. Because he's not barred – I mean, he could go out tomorrow, Mr. Yowell could go out tomorrow and bring a claim in the Court of Federal Claims. He could certainly go out tomorrow and file a claim. There's no statute of limitations problem or anything of that sort? I won't – I'm just thinking out loud here. On behalf of the government, I'm certainly not willing to say that there's no statute of limitations problem. I have – You're not aware of any issue like that? I know that there's a statute of limitations problem for the quiet title action. No, no, I understand. But we're now talking about the possible APA challenge of the – of the final rule, the disbursement. No, I'm – Your objection was that's really seeking money, and there is no waiver of sovereign immunity for the United States to pay out money except under the Indian Tucker Act, essentially under the Tucker Act in the Court of Federal Claims, right? The two waivers would be different. There's a distinct waiver of sovereign immunity for an APA claim challenging agency action and seeking nonmonetary relief. So if what he's looking for is to stop the agency action or to say that it's unlawful or a declaration that it's unlawful, I don't think that would be limited to the Court of Claims or the Court of Federal Claims. I think that such an action could be filed in other district courts. Again, there may be other problems with that case, and I'm certainly not suggesting that those things would be a valid claim. In sum, unless the panel has further questions, the government seeks appropriateness of the General Counsel. Yeah, Counsel, it's Judge Gould. I've got a question for you. The only thing of concern to me is the possibility of a complaint amendment relating to the APA, which I don't know what we would call it now, but years ago it used to be called a supplemental complaint that covers a time period, you know, but if there were such a claim relating to the distribution system, is it entirely clear that any relief would have to be monetary, like in that Marceau case that the circuit recently handed down, on which I was on the panel? I think we permitted some APA, possibility of APA relief that could have an incidental monetary effect, but would be primarily injunctive. And I don't know the circumstances with this distribution system here, but I mean, is that a possibility? Just to clarify your question, Judge Gould, are you asking whether it would be possible to order some amount of monetary relief under the APA, or are you or whether that we should allow an amendment of the complaint? Is there relief that could be ordered if we permitted a supplemental complaint? Is there relief under the APA that could be ordered that might have some monetary consequence, but that would still be characterized as a valid APA remedy? Well, I certainly think. Like in the nature of injunction. I certainly think that if the court were, for example, to enjoin the government from paying out monies, and this is speaking, of course, very hypothetically here. The court could say to an agency, don't pay out a certain amount of money. Paying out that money would be unlawful. And I think that that would be a valid APA remedy. That wouldn't run afoul of the sovereign immunity problem. However, to the extent that the court would be effectively ordering payment to an individual that were not, you know, as a result of its judgment, I think that would probably be precluded. And I'm not aware of the case that you cited, Judge Gould, so it may be that I'm not fully up on the law in that respect. But that's speaking off the cuff here. That's my. I think in Marceau, we left the possibility that there might be an injunction saying you have to come up with a plan to make buildings habitable, which would have a monetary effect. But what wouldn't be a direct monetary remedy? Well, in this case, I think in this case, it's clear that the plaintiff is seeking relief of one of two kinds, I think, financial, direct money payments, in addition to what he believes he'll be getting under the distribution scheme or land. And as described in our briefs, we don't think either of those are valid claims because there's not a sovereign immunity or there's not a valid sovereign immunity waiver in this case. If there's no further questions. Counsel, one last question. Counsel has had some pretty, well, he's alleged a lot of different acts and you've gone through some of those acts and some he doesn't allege, some he doesn't talk about in his brief, some he does, and therefore under the procedure of our court, some are waived as a result of his actions and then some he just doesn't have any jurisdiction about. But you understand that because of the amendment issue, we have to delve into each one of the potentials that he has argued. You understand that, don't you? Yes, Your Honor. Okay. I just want to make sure the government agreed with that because the government's briefs seem to indicate that he's waiving all these things and therefore done. And we're really talking about a potential motion to amend here. Well, the government, with respect, Your Honor, we don't think the plaintiff's appeal brief suggests that in any way, shape, or form. And in addition, because of the number of other actions that are currently proceeding, we think there are special circumstances here that certainly don't warrant, that certainly warrant not granting any sort of amendment in the district court in this case. There's no type of relief here that the plaintiff is seeking that hasn't either already been adjudicated or is already in process somewhere else. It would simply be a burden, I think, to the United States government to continue this particular proceeding in what all the other forms of relief are also being sought elsewhere. Thank you. Thank you, Your Honor. Thank you. You have a minute or so for rebuttal. There certainly are extraordinary circumstances. This case in the United Nations where I spoke is on the same docket as Darfur. The eyes of the world are on this Court and these cases that are before you today. As far as the Administrative Procedures Act, there's no request for money in this lawsuit, in the Yall case. It's not about damages. It's about a declaration or an injunction with regard to what that payment is for. The Dan case started in Nevada. It went to this Court. A 60B motion is appropriate in Nevada, not in Minnesota, not in D.C., not in the Court of Claims. That's where the Dan case started. The Dan case started and it dealt with aboriginal title. It never dealt with the treaty. The declaration of this distribution act purports to extinguish all rights under the treaty upon the distribution of the funds. This action seeks initially to get a declaration that that doesn't happen as a result of the receipt of that money. It has nothing to do with seeking money. It has nothing to do with what the Court of Claims has jurisdiction over. Well, that's really quite different from what you said earlier. You're saying you want to stop the distribution. What you said earlier is you want to stop the distribution. Now you're saying you want a declaration that the distribution doesn't extinguish rights. Those are two very different kind of claims. Well, that's what I said earlier and that's what the complaint says. It seeks a declaration, a declaratory judgment with regard to what the effect of the distribution is. There's no possible amendment to that based on the new rule. No, but there would be in the Administrative Procedures Act with regard to an injunction in terms of what the effect of the distribution would be. It would be limited to these purposes. I've never heard of anything like that. It's one thing to say that you invalidate the rule for, you know, being contrary to statute or being an abuse of discretion and you set aside the rule. I've never heard of a declaratory action under the APA as to the effect of a rule. There's injunctive relief, we believe, under the Administrative Procedures Act with regard to the distribution of the money being inconsistent with what the Dan decision was about and with what the ICC proceedings were about. And that's what you're trying to amend your complaint to say? To seek relief under the Administrative Procedures Act, yes. I've never heard of such a relief under the Administrative Procedures Act. You can bring a, if you have a final agency action, which you didn't when you brought the complaint, but I guess there isn't a final agency action now, you can bring, you know, you could go to the district court now and try to set that, bring a lawsuit, try to set that agency action aside under the APA. But I've never heard of a APA action where you can bring a declaratory judgment and say we accept this rule, but we want a declaration that this is what it means rather than something else. Do you have any authority for that? No, but maybe I'm saying the same thing in a different way, an injunction with regard to what the rule is doing, what the effect of the rule is in terms of the rule. I understand what you're saying. Do you have authority for that? For the thing you now say you're trying to do? I've never heard of such a case. I've never heard of such a case as this either, Your Honor. I mean, it's the only case that's on the docket in the United Nations on an emergency basis with regard to the violation of the Western Shoshone's rights. There's not another one on the Ninth Circuit docket. There's not another one in the docket anywhere in this country. Well, as we saw with the Supreme Court earlier this month, what those international bodies do is of little concern to us. Well, and that's why we cited some cases yesterday, and the case in which Justice Kennedy looked to the European Court of Human Rights in terms of finding that Western civilization needs to be in step with regard to the human rights decisions of these international bodies. And in the United Nations, they specifically found that one of the problems was the difficulties encountered by Western Shoshone peoples in appropriately challenging all such actions before national courts and in obtaining- I think we understand. Thank you. We will next hear an argument in the Western Shoshone National Council of the United States.
judges: Kozinski, Gould, Smith